**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ALEXANDER ZAJAC                      *

        Plaintiff          *

    v.                              *          Case No.: 8:22-cv-01620-DLB

EMMETT JORDAN                        *

        Defendant          *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

EMMETT JORDAN, the sole Defendant, by KARPINSKI, CORNBROOKS & KARP, P.A. and KEVIN KARPINSKI, his attorneys, pursuant to Fed. R. Civ. P. 12(b)(6), respectfully submits this Memorandum of Law in support of his Motion to Dismiss.

## INTRODUCTION AND SYNOPSIS OF PLAINTIFF'S CLAIMS

Plaintiff alleges that there has been a violation of his substantive rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. Plaintiff sues Defendant Emmett Jordan ("Mayor Jordan" or "the Mayor") in both his official capacity and his "personal capacity." Mayor Jordan is the current Mayor of the City of Greenbelt. Plaintiff seeks several forms of relief, including declaratory judgment, injunctive relief, attorney's fees and costs and an award for "damages" against Mayor Jordan "in his personal capacity, consistent with 42 U.S.C. § 1983."

Stripped to its essence, Plaintiff's complaint is grounded on the claim that Mayor Jordan did not respond adequately to Plaintiff's request that Mayor Jordan take additional steps in essentially identical social media posts about the same public event, which steps, Plaintiff contends, may have benefitted visually impaired individuals who may rely on screen readers to consume information from social media. On or about February 11, 2022, the Mayor posted about

free health screenings set for February 12, 2022, by posting information on two (2) different Facebook pages and also tweeting about the same event on his Twitter account. On February 12, 2022, in comments posted on one of the pages, Plaintiff complained about the form of the posts and the Mayor responded the same day.

Three (3) days later, on or about February 16, 2022, Plaintiff filed suit against Mayor Jordan in the Circuit Court for Prince George's County in the civil action No. CAL 22-04042. The defense timely removed the lawsuit to this Court based on federal question jurisdiction. The Complaint identifies six (6) "claims for relief" as well as a "prayer for relief" listing eight (8) various forms of relief. In the interests of brevity and clarity, the "claims for relief" are hereinafter referred to as "counts."

Apparently uncertain about the viability of any single claim or form of relief, Plaintiff invokes a plethora of federal statutes seeking some traction for his purported injury. Counts 1, 3 & 5 are asserted against Mayor Jordan in his "official capacity." Counts 2, 4 & 6 are asserted against Mayor Jordan in his "personal capacity." Count 1 seeks declaratory judgment that Mayor Jordan violated §§ 12133 (Title II) and 12203 (Title IV) of the ADA, and alleges that, through such purported violations, Mayor Jordan also violated 42 U.S.C. § 1983. Count 2 seeks declaratory judgment that Mayor Jordan violated § 12182 (Title III) and § 12203 of the ADA, and again, through such alleged violations, that Mayor Jordan violated 42 U.S.C. § 1983. Counts 3 and 4, referencing 42 U.S.C. § 1983, various sections of the ADA, as well as 29 U.S.C. § 794(a) (from the Rehabilitation Act), assert that Plaintiff is entitled injunctive relief "against continued retaliation in violation of the ADA." Counts 5, citing various sections of the ADA and 29 U.S.C. § 794a, asserts Plaintiff is entitled to attorneys' fees and costs. Count 6, citing 42 U.S.C. §§ 1983 and 2000a-3 and various sections of the ADA, again, is a claim for attorneys' fees and costs. Counts 5 and 6 also cite Maryland Rule 2-603(a) for the proposition that Plaintiff is entitled to

"costs."

Plaintiff's Prayer for Relief (Complaint, page 10, ¶ ¶ A-G) essentially repeats the requests contained in the counts listed above and may fairly be summarized as: a) a demand for declaratory judgment that the ADA was violated; b) a demand for injunctive relief directing Mayor Jordan to refrain from posting information in social media "only in images;" c) a demand for attorney's fees and costs; and, d) a demand for an "award of damages" against Mayor Jordan. Plaintiff prays the first three (3) forms of relief against Mayor Jordan in both his official capacity and in his personal capacity. Plaintiff seeks damages from the Mayor solely in his individual capacity. Plaintiff's "Prayer for Relief" varies from his requests for injunctive relief in Counts 3 and 4 (¶ ¶ 53 and 57), in that the Counts 3 and 4 seek to have the Court enjoin the Mayor from engaging in "continued retaliation" while the Prayer for Relief (Complaint, page 10, ¶ ¶ B and E) seeks only to have Mayor "refrain from posting information only in images."

Out of an abundance of caution, the defense construes Counts 1 through 4 as claims for declaratory judgment and injunctive relief as well as assertions of entitlement to relief through the enforcement provisions for violations of the ADA. In any event, under any construction, all claims fail.

## SUMMARY OF THE ARGUMENT

Plaintiff has failed to sufficiently plead allegations which would sustain a claim for violation of the ADA under claims for discrimination on the basis of a disability and/or for retaliation for engagement in a protected activity. There are at least two (2) preliminary fatal defects in the manner in which Plaintiff has structured the majority of his claims. First, under well-established and frequently applied law, 42 U.S.C. § 1983, which is not an independent source of rights, does not serve as an enforcement vehicle where a statutory scheme, such as the ADA, has its own comprehensive enforcement provisions. Second, under well-established and frequently

applied law, Mayor Jordan is not liable in his individual capacity for an alleged violation of Title II of the ADA nor for alleged claim of retaliation under the ADA through Title II or through Title IV. Even if that conclusion was incorrect, and it is not, the Mayor would be entitled to qualified immunity under the allegations directed against him in his individual capacity.

Because the allegations underlying Plaintiff's claim of discrimination fail, there is no justification for a declaratory judgment or injunctive relief against Mayor Jordan, nor any related award of attorneys' fees and costs, nor any award for some amount of undefined "damages" compensation.

There was no retaliation under the ADA or, any other theory, by Mayor Jordan, precluding any need for injunctive relief directing him to refrain from "continued" retaliation. Among other pleading defects, Plaintiff flirts with sanctionable conduct in prosecuting a "retaliation" claim based on Mayor Jordan's two (2) sentence reply to Plaintiff's request. The ADA is not a code of civil conduct and Plaintiff's alleged offense at the plainly innocuous comment from the Mayor does not amount to an actionable injury giving rise to a retaliation claim under any federal statute. Plaintiff's attempt to prosecute such a claim is an utter waste of a Court's resources as well as the resources of the defense.

Plaintiff's attempt to invoke Title III of the ADA, which deals exclusively with private entities owning public accommodations, is also entirely unavailing.

Because Counts 1 through 4 fail, an award of attorneys' fees and costs is not warranted. However, even if there was some reason to proceed, Counts 5 and 6 seeking such an award, do not state stand-alone causes of action and should be dismissed.

## FACTUAL ALLEGATIONS DRAWN FROM THE COMPLAINT

Solely for the purposes of the instant motion, and without conceding the veracity of any allegation, Mayor Jordan recounts allegations of fact drawn from Plaintiff's Complaint.

Plaintiff has "poor eyesight that necessitates he wear corrective lenses." ¶ 8. Plaintiff's corrective lenses "make it far more difficult for Plaintiff to read letters embed [sic] in images rather than letters displayed as plain text." ¶ 9.

Mayor Jordan was elected to the city council in November of 2021. ¶ 13. Subsequently, he was elected to serve as Mayor by the city council. *Id.* Mayor Jordan maintains a Facebook page called "Mayor Emmett Jordan" and a Facebook profile called "Emmett Jordan," and both of these accounts are members of a private Facebook group called "Greenbelters." ¶ 14. Mayor Jordan also maintains a Twitter account with handle @EmmettJordan4MD and with a display name of "Emmett Jordan." ¶ 15.

On February 12, 2022, Mayor Jordan posted to his page "Mayor Emmett Jordan" a post that included the following text: "Free health screenings at Beltway Plaza Mall and Greenbelt Aquatic and Fitness Center Saturday (02/12) from 10-3pm in honor of Black History Month. All are welcome!!!" ¶ 16. The post included a picture with information about where in the parking lot the health screenings would be provided as well as which screenings would be provided. ¶ 17. Mayor Jordan did not include this information in text. *Id.* Mayor Jordan duplicated this post in the "Greenbelters" group. ¶ 18. Mayor Jordan also created a Facebook "event" that was "hosted" by his page. ¶ 19. The event included the same picture as the Facebook posts. *Id.* Mayor Jordan did not include the information from the image in text and did not include any hyperlink to a website offering this information in text. *Id.* Mayor Jordan similarly posted to his Twitter account a tweet that included the following text: "Free health screenings at @BeltwayPlaza and Greenbelt Aquatic [sic] & Fitness Center - Saturday (02/12) from 10-3pm in honor of Black History Month." ¶ 20. The tweet included the same picture as the Facebook posts. ¶ 21. Mayor Jordan did not include the information from the image in text. *Id.* Plaintiff has attached to the Complaint purported screenshots of the Greenbelters' Facebook page and the "event" posting as Exhibits A and B,

respectively.

Plaintiff, in a comment on the post in the "Greenbelters" group, asked Mayor Jordan to "make the details in that image available to folks with screen readers." ¶ 22. There is no indication in the statement that Plaintiff was personally unable to read the postings. Plaintiff indicated that he thought Mayor Jordan's Facebook page was "technically [his] campaign's page." ¶ 23. Mayor Jordan denied this categorization, stating that his page is a "government official" page and not a campaign page and stating that the Mayor uses it to share city-related information. ¶ 24. Plaintiff alleges that Mayor Jordan uses the title "Mayor" on the page and uses it "to share city-related information." *Id.* Mayor Jordan also engages in numerous posts about deals and services provided by local businesses. ¶ 31.

Plaintiff alleges that "[m]ost" of the tweets on Mayor Jordan's Twitter feed are substantial duplicates of those on his Facebook page. ¶ 33. In response to Plaintiff's comments about the posts, Mayor Jordan then used his personal Facebook profile, where Mayor Jordan wrote: "I'm sorry that you are bitter about the results of the last City Council election. I hope you can find some more constructive ways to become engaged in the affairs of the City." ¶ ¶ 35 & 37.[1]

Under the heading of "facts," Plaintiff includes a significant number of legal conclusions as well as a few instances of rank speculation related to Mayor Jordan's motives and actions. Thus, omitted here from this summary of Plaintiff's "facts" are all or part of ¶¶ 23, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 38 & 39.

---

[1]    Plaintiff was one (1) of three (3) losing candidates in a ten (10) person race for seven (7) at large seats for the Greenbelt City Council on November 3, 2021.
See:    https://www.greenbeltmd.gov/government/city-administration/city-clerk-s-office/election-information/election-results, last visited June 28, 2022.
        Mayor Jordan succeeded in that race and on November 8, 2021, was subsequently elected by unanimous vote of the other successful candidates for the Council.
See:    https://greenbeltmd.granicus.com/player/clip/1538?view_id=2&redirect=true, last visited on June 28, 2021.

Distilled to its essence, the Complaint alleges circumstances arising from: a) Mayor Jordan's use of social media on a single day in order to share content created by a non-governmental third party about the health-screening event intended to serve the benefit of the community; b) Plaintiff's request for an adjustment to the manner in which the information was shared on behalf of visually impaired residents; and, c) Mayor Jordan's response to that request sent directly to Plaintiff.

## STANDARD OF REVIEW

A Court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *Ibarra v. United States*, 120 F.3d 472 (4th Cir. 1997). Such a motion should be granted when the plaintiff has failed to plead facts that plausibly suggest that he is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Indeed, the plaintiff must make allegations that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). The Court, however, need not accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## ARGUMENT

## I.   42 U.S.C. § 1983 CLAIMS DO NOT LIE WHERE PLAINTIFF IS ASSERTING VIOLATIONS OF SUBSTANTIVE RIGHTS AFFORDED BY THE ADA.

Under even an expansive reading, Plaintiff's entire Complaint is solely grounded on statutory rights afforded by the provisions of the ADA, including the ADA's express enforcement

schemes. Plaintiff's various assertions that he is entitled to some relief through the vehicle of 42 U.S.C. § 1983 are incorrect and all such claims (pleaded in the alternative in Counts 1, 2, 4 & 6 and as a basis for relief in the Prayer for Relief) should be dismissed with prejudice.

"Even if a plaintiff demonstrates that a federal statute creates an individual right, there is only a rebuttable presumption that the right is enforceable under § 1983." *Blessing v. Freestone*, 520 U.S. 329, 341 (1997). This Court has held on multiple occasions that rights under the ADA are not enforceable under § 1983. "[Plaintiff] concedes that rights created by the ADA cannot be vindicated by resort to a claim under 42 U.S.C. § 1983." *Fenicle v. Towson Univ.*, No. CV ELH-18-0917, 2018 WL 5885526, at *13 (D. Md. Nov. 8, 2018). *See also Traversa v. Ford*, 718 F. Supp. 2d 639, 644 (D. Md. 2010) ("[Plaintiff] cannot recover under § 1983 for a violation of the ADA."); *Henderson v. Gilbert*, No. JFM-06-1284, 2006 WL 1966797, at *1 (D. Md. July 10, 2006) ("Where a federal statute, like the ADA, provides a comprehensive remedial scheme, it provides the exclusive mechanism for vindicating alleged wrongs following within its purview."); *Walker v. City of Salisbury*, 170 F. Supp. 2d 541, 549 (D. Md. 2001)("this Court concludes that plaintiff may not in Count II present in this Court a § 1983 cause of action based on an ADA claim arising by reason of his disability.").

The Honorable Ellen C. Hollander writing for this Court in the 2018 opinion in *Fenicle*, *supra*, comprehensively identified authorities from various federal appellate courts reaching the same conclusion:

> Section 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361, 132 S.Ct. 1497, 182 L.Ed.2d 593 (2012). To my knowledge, the Fourth Circuit has not addressed the issue directly. But, each of the federal appellate courts to have considered the question has decided that claims under § 1983 are preempted by the ADA and Rehabilitation Act. *See, e.g.*, *Tri-Corp Housing Inc. v. Bauman*, 826 F.3d 446, 449 (7th Cir. 2016); *M.M.R.-Z. v. Puerto Rico*, 528 F.3d 9, 13 n.3 (1st Cir. 2008); *A.W. v. Jersey City Public Schools*, 486 F.3d 791, 804-06 (3d Cir. 2007); *Vinson v. Thomas*, 288 F.3d 1145,

1156 (9th Cir. 2002); *Lollar v. Baker*, 196 F.3d 603, 610 (5th Cir. 1999); *Davis v. Francis Howell School Dist.*, 138 F.3d 754, 757 (8th Cir. 1998); *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1531 (11th Cir. 1997).

*Fenicle*, 2018 WL 5885526, at *13.

Research performed in the preparation of the instant motion failed to reveal any contrary controlling authority from the United States Court of Appeals for the Fourth Circuit nor have any of the appellate decisions cited in *Fenicle* been challenged on this point in any persuasive, let alone controlling, manner. Therefore, any claim for relief sought through § 1983 should be dismissed.

## II.    THE ADA DOES NOT PERMIT CLAIMS AGAINST THIS DEFENDANT IN HIS INDIVIDUAL CAPACITY FOR DISCRIMINATION OR RETALIATON.

Counts 2, 4 and 6 pleaded against Mayor Jordan in his individual capacity should be dismissed as there is no individual liability for discrimination or for retaliation under Title II of the ADA. This concept is grounded on the plain language interpretation of the statute - which prohibits discrimination by "public entities." As discussed below, Plaintiff's tortured attempt to assign liability to Mayor Jordan through § 12188 of Title III of the ADA (addressing "Public Accommodations and Services Operated by Private Entities") (emphasis added) is unavailing and also should be rejected.

The ADA "[does] not provide for causes of action against defendants in their individual capacities." *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010) (citing *Baird ex rel. Baird Rose*, 192 F.3d 462, 472 (4th Cir.1999). *See also Munoz v. Baltimore Cnty.*, Md., No. CIV.A. RDB-11-02693, 2012 WL 3038602, at *5 (D. Md. July 25, 2012) (citing *Sternheimer*, stating that the case stands for the proposition that "Fourth Circuit has held that there is no individual liability under the ADA."); *Young v. Barthlow*, No. CIV.A. RWT-07-662, 2007 WL 5253983, at *2 (D. Md. Nov. 7, 2007), *aff'd,* 267 F. App'x 250 (4th Cir. 2008) ("Because individual liability is precluded under ADA Title II, Plaintiff's ADA claims against the individuals named in this suit

must fail."); *Pathways Psychosocial v. Town of Leonardtown*, MD, 133 F. Supp. 2d 772, 780 (D.

Md. 2001) ("Although the Fourth Circuit [had not yet] not explicitly ruled on this question, in

*Baird* [*supra*], the court recognized that both parties agreed that Title II of the ADA does not

recognize a cause of action <u>for discrimination</u> by private individuals, only public entities.")

(emphasis added).

In *Baird*, the Fourth Circuit acknowledged, without accompanying analysis, that claims of

discrimination could not be asserted against defendants in their individual capacity. *Baird*, 192

F.3d at 471. The Court then did expressly address and conclude that claims under the retaliation

provisions of the ADA could not be prosecuted against defendants in their individual capacity. In

the context of Title II claims against a teacher, principal and the school board, among other

holdings, the Fourth Circuit affirmed the district court's dismissal of retaliation claims against the

individual defendants in their individual capacity for failure to state a claim. The Court of Appeal's

analysis remains controlling here:

> Although they acknowledge that § 12203(a) may be read to prohibit retaliation
> against individuals for engaging in protected conduct, Appellees argue that this fact
> does not answer the pivotal question of whether Congress has provided individuals
> who have been retaliated against for engaging in conduct protected by the ADA
> with a private cause of action against the persons who are responsible for the
> retaliation in their individual capacities. Appellees [ assert that Congress did not
> supply such a cause of action and instead chose to limit the remedies available to
> those who have suffered retaliation for conduct protected by the ADA to those
> remedies available under Title VII. See 42 U.S.C.A. § 2000e–5 (West 1994). We
> agree.

> The remedies available for a violation of the antiretaliation provision of the ADA
> in the employment context are set forth in 42 U.S.C.A. § 12117 (West 1995). See
> 42 U.S.C.A. § 12203(c). Section 12117 specifically makes the remedies available
> under Title VII applicable to actions under the ADA. See 42 U.S.C.A. § 12117(a)
> (providing that "[t]he powers, remedies and procedures set forth in section[ ] ...
> 2000e–5 ... of this title shall be the powers, remedies and procedures this subchapter
> provides to ... any person alleging discrimination on the basis of disability"). The
> enforcement provision of Title VII permits actions against an "employer,
> employment agency, labor organization, or joint labor-management committee."
> 42 U.S.C.A. § 2000e–5(b). Title VII and the ADA define an "employer" in

pertinent part as "a person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C.A. § 2000e(b) (West 1994); see 42 U.S.C.A. § 12111(5)(A) (West 1995). We have expressly held that Title VII does not provide a remedy against individual defendants who do not qualify as "employers." *See Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir.1998) (holding that supervisors cannot be held liable in their individual capacity under Title VII because they do not fit within the definition of an employer). Because Title VII does not authorize a remedy against individuals for violation of its provisions, and because Congress has made the remedies available in Title VII applicable to ADA actions, the ADA does not permit an action against individual defendants for retaliation for conduct protected by the ADA. *See Stern v. California State Archives*, 982 F.Supp. 690, 692–94 (E.D.Cal.1997) (holding that individuals who do not qualify as "employers" under Title VII cannot be held liable under the ADA); *cf. Hiler v. Brown*, 177 F.3d 542, 545–46 (6th Cir.1999) (explaining that because it incorporates the remedies available under Title VII, the Rehabilitation Act does not permit actions against persons in their individual capacities). Accordingly, we hold that the district court properly dismissed Baird's action against [the teacher and the principal] in their individual capacities.

*Baird*, 192 F.3d at 471–72 (footnotes omitted).

Thus, even if Plaintiff sufficiently alleged retaliatory conduct by Mayor Jordan, and for reasons discussed below he did not, the claim cannot proceed against Mayor Jordan in his individual capacity and should be dismissed.

## III.   PLAINTIFF HAS FAILED TO PLEAD A PRIMA FACIE CASE OF DISABILITY DISCRIMINATION FOR FAILURE TO PROVIDE A PUBLIC SERVICE.[2]

"To establish a violation of [Title II of the ADA, a plaintiff] must prove '(1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or

---

[2]     The allegations in the Complaint do not establish that Mayor Jordan was engaged in providing a public service when he reposted a third party's informational page to his "Mayor Emmett Jordan" Facebook page. Should the litigation proceed beyond this preliminary stage, the defense expressly reserves the right to challenge in any and all respects whether or not the posts amounted to a public service within the meaning of the ADA. Furthermore, it remains entirely unclear that an individual using a social media platform might be liable under the ADA for a purported defect in the manner in which the platform presents the information to the public. *See Biden v. Knight First Amend. Inst. At Columbia Univ.*, 141 S. Ct. 1220, 1221, 209 L. Ed. 2d 519 (2021). (Justice Thomas concurring) ("applying old doctrines to new digital platforms is rarely straightforward … it seems rather odd to say that something is a government forum when a private company has unrestricted authority to do away with it.").

activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disability.'" *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018) (quoting *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 (4th Cir. 2016)). Here, Plaintiff's Complaint is deficient, at least, in respect to the first and third elements.

As to the first element, Plaintiff has alleged that he has "poor eyesight that necessitates he wear corrective lenses." ¶ 8. Plaintiff's corrective lenses "make it far more difficult for Plaintiff to read letters embed [sic] in images rather than letters displayed as plain text." ¶ 9. In response to the allegedly offending social media posts, Plaintiff posted in the "Greenbelters" Facebook page, group, asking Mayor Jordan to "make the details in that image available to folks with screen readers." ¶ 22. Nowhere in the allegations does Plaintiff expressly plead that he is disabled within the meaning of the ADA nor does he state that he personally was unable to comprehend the substance of the allegedly offending posts.

In *Wicomico Nursing Home*, *supra*, the Fourth Circuit found generalized pleading related to the existence of any disability inadequate and affirmed dismissal of the ADA claims (as well as a related Rehabilitation Act claim). The Court of Appeals provided the following analysis:

> The Nursing Homes failed to allege that the Residents are disabled within the meaning of the ADA, which defines disability as "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1) (defining "disability"). A plaintiff is disabled if he can show "(1) that he has a physical or mental impairment, (2) that this impairment implicates at least one major life activity and (3) that the limitation is substantial." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 254 (4th Cir. 2006).
>
> The Complaint, however, pleads only the vague generality that the Residents are "qualified individuals with a disability." <u>This conclusory phrase is the sum total of the Complaint's allegations addressing the elements of an ADA claim</u>. The remainder of the Complaint fails to provide any additional allegations as to how or why the Residents are disabled or meet the statutory requirements for disability.

***

The Complaint thus fails, on its face, to plead the necessary and basic elements of an ADA claim.

Further, the Nursing Homes also failed to plead that any Resident's alleged disability motivated the Secretaries to deny Medicaid benefits. In fact, the Living Residents are currently receiving Medicaid benefits. As to the Deceased Residents, the Complaint makes clear that they were denied Medicaid benefits not because of animus motivated by their alleged disability, but because of the Secretaries' alleged deficient administration.

*Wicomico Nursing Home*, 910 F.3d at 751 (emphasis added).

Here, beyond stating that he has limitations in his vision, Plaintiff fails to state that his impairment rises to the level of a disability within the meaning of the ADA, fails to state that his impairment precluded his ability to receive the "service" offered through Mayor Jordan's social media posts, and fails to articulate any set of circumstances where a finder of fact could infer Mayor Jordan was motivated by discriminatory animus in fashioning the posts. Thus, the Complaint is subject to dismissal for failure to plead the essential first element of a Title II ADA claim.

Even assuming Plaintiff has adequately alleged the existence of qualifying disability, it remains that his pleading is inadequate in terms of pleading any denial of the benefits of such service, program, or activity, or that he was otherwise discriminated against, on the basis of any such disability. Exhibits A and B attached to the Complaint (reattached here for the convenience of the Court as Exhibits A and B)[3] each have black text on a white background that provide the date, time and address of the health screenings. That same black text on a white background also

---

[3]    "[W]hen resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment. *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019) (citing *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015)).

provides information on the nature of the screenings to be provided. Thus, it remains unclear in what manner the posts offended the ADA.

Plaintiff's self-reported request was to the effect that Mayor Jordan should "make the details in that image available to the folks with screen readers." Complaint, ¶ 22. Federal regulations setting forth requirements for public entities in the provision of communications to the disabled appear at 28 C.F.R. § 35.160, *et seq*. These requirements include that "[a] public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). Under the section dealing specifically with "information and signage," the regulations provide that "[a] public entity shall ensure that interested persons, including persons with impaired vision or hearing, can obtain information as to the existence and location of accessible services, activities and facilities." 28 C.F.R. § 35.163(a) (emphasis added). Mayor Jordan's social media notices of the public health screenings, included accessible information as to the existence and location of "services, activities and facilities." In other words, Mayor Jordan's posts satisfied 28 C.F.R. § 35.163(a), in that the text included in the posts described the service and identified the date, time and location of the services. Plaintiff's Complaint may be dismissed alternatively or additionally on this basis alone.

## IV.    PLAINTIFF HAS FAILED TO SUFFICIENTLY PLEAD A PRIMA FACIE CASE OF RETALIATION UNDER THE ADA AND COUNTS 3 AND 4 SHOULD BE DISMISSED.

"In order to establish a prima facie case of retaliation, a plaintiff must allege (1) that she has engaged in conduct protected by the ADA; (2) that she suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action." *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002). Assuming, solely for the purpose of this motion and without conceding the points

that Plaintiff can satisfy the first and third elements, the claim nevertheless falls flat on its face as to the second element of an "adverse action." The sum total of Plaintiff's allegations in this regard consist of:

> In response to Plaintiff's request to "make the details in that image available to folks with screen readers," Defendant wrote: "I'm sorry that you are bitter about the results of the last City Council election. I hope you can find some more constructive ways to become engaged in the affairs of the City." See Exhibit A (screenshot of Defendant's retaliation taken by Plaintiff on February 13, 2022).

Complaint, ¶ 37.

<u>There is no reasonable inference to be drawn from Mayor Jordan's comment that Plaintiff was threatened with any consequence whatsoever, let alone any consequence violative of the anti-retaliation provisions of the ADA</u>. Not only is there no threat contained in Mayor Jordan's statement, there are no allegations in the Complaint that Plaintiff suffered any adverse action. Plaintiff was not denied the opportunity to participate in the underlying event, was not blocked from commenting on Mayor Jordan's social media, and was not precluded from voicing his opinions about the allegedly offending posts.

In a case directly on point with the instant circumstances, *Higdon v. Jackson*, 393 F.3d 1211(11th Cir. 2004), the Eleventh Circuit rejected the notion that rude comments amounted to retaliation under the ADA. Although its analysis refers to employment law, the case in pertinent part dealt with a citizen's offended feelings about comments made by a government official in the course of providing services the citizen was seeking. Obviously, the Defense does not concede that Mayor Jordan's response was incivil in any respect. Plaintiff may have been displeased with the substance and or the tone, but his mere pique upon reading Mayor Jordan's response is not a basis to file a lawsuit based on retaliation.

The *Higdon* Court's analysis explains:

<u>[T]he ADA is not a code of civility</u>, and allegations of adverse actions must be

considered under both an objection and subjective standard:

> Indeed, not "every unkind act" is sufficiently adverse. Rather, we analyze that sufficiency "on a case-by-case basis, using both a subjective and objective standard." As a general rule, "[a]n ADA plaintiff must demonstrate that a reasonable person in his position would view the ... action in question as adverse." We have said that "[a]n employment action is considered 'adverse' <u>only if it results in some tangible, negative effect</u>...."

> [W]hile conduct must be material to be adverse in this context, it need not be traumatic. If we set the bar too high, we run the risk of chilling legitimate opposition to unlawful and discriminatory practices, and "could stifle [a person's] willingness to file charges of discrimination."

[*Shotz v. City of Plantation, Fla.,* 344 F.3d 1161, 1182 (11th Cir. 2003)] (citations omitted). We have explained that "an employment action ... is not adverse merely because the employee dislikes it or disagrees with it," and "not everything that makes an employee unhappy is an actionable adverse action." *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir.1998) (citations and quotations omitted). An adverse action must meet a "threshold level of substantiality" before it can serve as the basis of a retaliation claim. *Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir.1998).

*Higdon*, 393 F.3d at 1219.

More recently, and also on point, the Fourth Circuit provided the following analytical framework for an ADA retaliation claim in the context of affirming summary judgment for an employer:

> An alleged retaliatory action must be "materially adverse," meaning that the plaintiff must show that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." [*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405 (2006)] (internal citations omitted). In other words, the harm must be a " '<u>significant' detriment</u>," not "relatively insubstantial or 'trivial.'" *Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015) (quoting *Burlington*, 548 U.S. at 68, 126 S.Ct. 2405) (emphasis added).

*Laird v. Fairfax Cnty., Virginia*, 978 F.3d 887, 893 (4th Cir. 2020) (.

Because, Mayor Jordan's response to Plaintiff's request can in no reasonable manner be considered materially adverse to Plaintiff, Counts 2 and 3, grounded on retaliation, must fail on

this additional and/or alternative basis. Likewise, Plaintiff's requests for injunctive relief prohibiting "continued retaliation" are utterly without merit and should be denied.

## V.      DECLARATORY JUDGMENT IS UNWARRANTED AND UNNECESSARY.

The Fourth Circuit recently provided the following guidance for courts considering whether to entertain requests for declaratory judgment:

> Under the Declaratory Judgment Act, upon the proper pleading by an interested party, a district court "may declare [their] rights and other legal relations." 28 U.S.C. § 2201(a) (emphasis added). *See Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 201–02 (4th Cir. 2019). This Act "merely permits" federal courts to hear those cases rather than granting litigants a right to judgment. *Id.* at 201 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137); *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) ("This permissive language has long been interpreted to provide discretionary authority to district courts to hear declaratory judgment cases").

*Med. Mut. Ins. Co. of N. Carolina v. Littaua*, 35 F.4th 205, 208 (4th Cir. 2022). "In determining whether to entertain a declaratory judgment action, a court must consider whether declaratory relief would 'serve a useful purpose in clarifying and settling the legal relations in issue,' or would 'terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.'" *Nason Constr., Inc. v. Hebrew Quality Constr., Inc.*, No. CV SAG-19-3013, 2020 WL 6044295, at *5 (D. Md. Oct. 13, 2020) (quoting *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th Cir. 2004) (internal citations omitted in original) (dismissing counts for declaratory judgment where the counts were duplicative of the underlying substantive claims).

Declaratory judgment is entirely unnecessary where such a judgment will not afford Plaintiff any relief beyond that which he might be entitled to had he pleaded any circumstances giving rise to some liability under the ADA. For all the reasons set forth elsewhere in this Memorandum, no such liability exists. *See Championship Tournaments, LLC v. United States Youth Soccer Ass'n, Inc.*, No. CV SAG-18-2580, 2019 WL 6895876, at *2 (D. Md. Dec. 18, 2019)

(dismissing count for declaratory judgment where it would not afford claimant "any relief it will not already obtain via its judgment on liability."). Therefore, Counts 1 and 2 should be dismissed as to any request for some form of declaratory judgment.

## VI.   INJUNCTIVE RELIEF IS UNWARRANTED AND UNNECESSARY.

Because there has been no discrimination or retaliation here, no injunctive relief is warranted. The Fourth Circuit has provided the following analytical framework:

> In general, injunctive relief is a matter left to the discretion of a trial court and that discretion should not be disturbed absent a "strong showing of abuse." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Although injunctions are by no means mandatory in a Title VII case, a district court must, of course, exercise its discretion in light of the prophylactic purposes of the Act to ensure that discrimination does not recur. *Johnson v. Brock*, 810 F.2d 219, 225 (D.C.Cir.1987); *Albemarle Paper Co.*, 422 U.S. at 416–17, 95 S.Ct. at 2371. If this is done, we then should defer to the lower court's choice in crafting appropriate relief in recognition of its greater familiarity with the peculiar circumstances of the case. *Brock*, 810 F.2d at 226.

*Spencer v. Gen. Elec. Co.*, 894 F.2d 651, 660 (4th Cir. 1990), *abrogated on other grounds by Farrar v. Hobby*, 506 U.S. 103, 113 S. Ct. 566 (1992) (emphasis added).

"Before a court grants a permanent injunction, the court must first find necessity—a danger of future violations." *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 347 (4th Cir. 2001). Mayor Jordan respectfully submits that because there has been no violation of the ADA, no prophylactic measures are merited.

## VII.   EVEN IF HE COULD BE SUED IN HIS INDIVIDUAL CAPACITY, MAYOR JORDAN IS ENTITLED TO QUALIFIED IMMUNITY UNDER THESE CIRCUMSTANCES.

Because Mayor Jordan may not be sued in his individual capacity for the reasons set forth above, the Court need not reach a qualified immunity argument. However, out of an abundance of caution, the defense notes that could Mayor Jordan be liable in his individual capacity in any respect, he would still be entitled to dismissal of Plaintiff's claims on the grounds of qualified

immunity.

> Government officials are protected by qualified immunity 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.' " *DiMeglio v. Haines*, 45 F.3d 790, 794 (4th Cir.1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)). "In analyzing a claim of qualified immunity it is ... necessary first to identify the specific ... right allegedly violated, then to inquire whether at the time of the alleged violation it was clearly established, then further to inquire whether a reasonable person in the official's position would have known that his conduct would violate that right." *Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir.1990) (Phillips, J., concurring) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 535, 105 S.Ct. 2806, 2820, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In our view, proper application of these principles leads inexorably to the conclusion that the [defendant]officials are fully entitled to qualified immunity in this case, because the right [plaintiff] contends was violated was not clearly established at the time of the alleged violations, and because the actions of the [defendant] officials reasonably could have been thought consistent with any rights [plaintiff] might have had.

*Torcasio v. Murray*, 57 F.3d 1340, 1343 (4th Cir. 1995) (ordering dismissal of all ADA and Rehabilitation Act claims, including dismissal on the grounds the defendants were afforded qualified immunity given that the rights they were accused of violating were not clearly established).

In order to overcome the assertion of qualified immunity in the instant matter, Plaintiff would have to demonstrate that it was clearly established that reposting a third-party's description of an event, complete with a textual description of the date, time, location and substance of that event, somehow violated clearly established rights under the ADA. Plaintiff would also have to demonstrate that Mayor Jordan's response to his request, which implicated zero materially adverse consequences for Plaintiff, somehow amounted to clearly established retaliation under the ADA. Plaintiff will be unable to demonstrate either circumstance. Thus, if there was some source of personal liability for Mayor Jordan in these circumstances, it remains that the Mayor is entitled to dismissal of any claim against him in his individual capacity on the basis of qualified immunity.

## VIII.   PLAINTIFF IMPROPERLY RELIES AN ON ADA PROVISION WHICH HAS NO BEARING ON THE CIRCUMSTANCES PLEADED.

Plaintiff invokes § 12188, the enforcement provision of Title III of the ADA, in a transparent effort to reach Mayor Jordan in his individual capacity. The Court should reject Plaintiff's tortured attempt to invoke Title III of the ADA. Title III has no application whatsoever to the provision of public services and instead, deals exclusively with private entities providing public accommodations. No amount of contortion in describing Mayor Jordan's extremely limited role in reposting information about an event created, advertised and conducted by a third party is going to serve as a basis for casting the Mayor as an individual affiliated with, let alone owning, a private entity engaged in the provision of a public accommodations. Plaintiff is plainly inviting the Court to misapply the ADA.

To state a claim under Title III

a plaintiff must allege (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the defendant denied the plaintiff public accommodations because of his disability.

*Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 839 (D.S.C. 2015). The term "private entity" means any entity other than a public entity (as defined in section 12131(1) of this title). 42 U.S.C. § 12181(6).

The essence of Title III is set out in the section providing what conduct is prohibited by the Title:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Even a brief sampling of places defined as "public accommodations" further illustrates the point. 42 U.S.C. § 12181(7) includes references to hotels, restaurants, movie

theaters, private schools and barber shops, to name just a few.

Title III is not a source of vindication for Plaintiff under these circumstances and Count 4 is subject to dismissal on this additional and/or alternative basis. Even if the claim was applicable, and it is not, qualified immunity would apply to bar the claim for the reasons set forth in forth above. Furthermore, the invocation of 42 U.S.C. § 12188, at best, is redundant and subject to dismissal on that basis as well.

## IX.  REQUESTS FOR RELIEF IN THE FORM OF ATTORNEY'S FEES AND COSTS ARE NOT STAND-ALONE CAUSES OF ACTION AND COUNTS 5 AND 6 SHOULD BE DISMISSED.

Counts 5 and 6 should be dismissed for failure to articulate a claim grounded on a substantive right instead of a form of potential remedy. As this Court has explained:

> The Supreme Court has recognized that "the question of whether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive." *Davis v. Passman*, 442 U.S. 228, 238, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). Because an award of attorneys' fees is a form of relief, *see Hess Constr. Co. v. Bd. of Educ.*, 341 Md. 155, 669 A.2d 1352, 1354 (1996) (noting that attorneys' fees, when authorized, are generally either a statutory or contractual remedy), it is not a standalone cause of action. Plaintiffs have in fact prayed for such relief in all of the counts.

*Carroll Co. v. Sherwin-Williams Co.*, 848 F. Supp. 2d 557, 570 (D. Md. 2012); *see also Covert v. LVNV Funding, LLC,* No. CIV.A. DKC 13-0698, 2013 WL 6490318, at *8 (D. Md. Dec. 9, 2013), *aff'd on other grounds*, 779 F.3d 242 (4th Cir. 2015). On the same basis, even if any claim in Counts 1 through 4 survives, it would be pointless to permit Counts 5 or 6 to proceed.[4]

---

[4]      The defense notes that Counts 1 and 2 (declaratory judgment) and 3 and 4 (injunctive relief) are also framed by title as forms of relief rather than assertions of substantive rights. *See Knight v. Manufacturers & Traders Tr. Co.*, 84 F. Supp. 3d 436, 445 (D. Md. 2015) ("a claim for injunctive relief is not a standalone cause of action."); *Rivero v. Montgomery Cnty., Maryland*, 259 F. Supp. 3d 334, 351, fn. 12 (D. Md. 2017) (in order for or a court to exercise federal-question jurisdiction in a declaratory-judgment action, plaintiffs must identify a cause of action under which a federal question would arise but for the availability of the declaratory judgment procedure.)(internal quotation omitted). In order to avoid veering into hyper-technicality, the defense assumes solely for the purposes of this motion and without conceding the point that Count 1 through 4 are

**CONCLUSION**

For all the foregoing reasons, Defendant Emmett Jordan respectfully requests this Honorable Court dismiss the Complaint in its entirety with prejudice for failure to state any claim upon which relief may be granted.

Respectfully submitted,

KARPINSKI, CORNBROOKS & KARP, P.A.

BY:      /s/ Kevin Karpinski
KEVIN KARPINSKI, #11849
AIS #9312150114
120 East Baltimore Street
Suite 1850
Baltimore, Maryland 21202-1617
410-727-5000
Kevin@bkcklaw.com
*Attorneys for Defendant Emmett Jordan*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of July 2022, the foregoing was electronically filed and a copy was served via first class United States Mail and by email to:

Alexander Zajac, Esquire
225 Lastner Lane
Greenbelt, Maryland 20770
ajz26@georgetown.edu
*Self-represented Plaintiff*

/s/ Kevin Karpinski
*Attorney for Defendant Emmett Jordan*

---

adequately tied to claims for substantive relief afforded through some source other providing the right to prosecute a claim, and more specifically, through the ADA. Stated differently, and as noted above, the defense is compelled by Plaintiff's "spaghetti on the wall' form of pleading to address the claims in alternative and overlapping fashion, but expressly does so without conceding the viability of any single cause of action.